## RECKENDORFER *v.* FABER.

1. The decision of the Commissioner of Patents in the allowance and issue of a patent creates a *prima facie* right only ; and, upon all the questions involved therein, the validity of the patent is subject to examination by the courts.
2. A combination, to be patentable, must produce a different force, effect, or result in the combined forces or processes from that given by their separate parts. There must be a new result produced by their union ; otherwise it is only an aggregation of separate elements.
3. A combination, therefore, which consists only of the application of a piece of rubber to one end of the same piece of wood which makes a lead-pencil is not patentable.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

*Mr. Charles F. Blake* and *Mr. Edmund Wetmore* for the appellant.

*Mr. John S. Washburn* and *Mr. George Gifford* for the appellee.

MR. JUSTICE HUNT delivered the opinion of the court.

This is an appeal from a decree of the United States Circuit Court for the Southern District of New York, dismissing the bill of complaint, which was filed to restrain the infringement by the respondent of certain letters-patent, and for an accounting and damages.

These patents relate to the manufacture of combined pencils and erasers.

1. The first was granted to Hymen L. Lipman, March 30, 1858; and was extended for a farther term of seven years from the 30th of March, 1872.

The material parts of the specification are as follows: —

"I make a lead-pencil in the usual manner, reserving about one-fourth of the length, in which I make a groove of suitable size, *A*, and insert in this groove a piece of prepared india-rubber (or other erasive substance), secured to said pencil by being glued at one edge. The pencil is then finished in the usual manner; so that, on cutting one end thereof, you have the lead, *B*, and on cutting at the other end you expose a small piece of india-rubber, *C*, ready for use, and particularly valuable for removing or erasing lines, figures, &c., and not subject to be soiled, or mislaid on the table or desk.

"In making mathemathical, architectural, and many other kinds of drawings, in which the lines are very near each other, the eraser is particularly useful, as it may be sharpened to a point to erase any marks between the lines; and, should the point of the rubber become soiled or inoperative from any cause, such cause is easily removed by a renewed sharpening, as in the ordinary lead-pencil."

The claim is as follows: —

"I do not claim the use of a lead-pencil with a piece of india-rubber, or other erasing material, attached at one end for the purpose of erasing marks; but what I do claim as my invention, and desire to secure by letters-patent, is the combination of the lead and india-rubber, or other erasing substance, in the holder of a drawing-pencil, the whole being constructed and arranged substantially in the manner and for the purposes set forth."

The drawings forming part of the specification exhibit a continuous sheath of uniform size, with interior grooves of different sizes, the eraser groove being larger than the lead groove.

2. The second patent is for an improvement upon the invention of Lipman, and was granted to Joseph Reckendorfer, the complainant, the 4th of November, 1862, and reissued on the 1st of March, 1872.

The material parts of the specification are as follows: —

" My invention is intended to provide a means whereby articles of greater size or diameter than the lead may be securely held in the head of a pencil of otherwise ordinary or suitable construction, without making the body of the pencil cumbrous or inconvenient. To this end, my invention consists, —

" *First*, Of a pencil composed of a wooden sheath and lead core, having one end of the sheath enlarged and recessed to constitute a receptacle for an eraser or other similar article, as hereinafter stated.

" *Second*, Of a pencil, the wooden case of which gradually tapers from the enlarged and recessed head towards its opposite end for the whole or a portion of the length, as hereinafter set forth.

" The receptacle for the eraser or other article is formed in the head, without too much weakening the wood, owing to the form of the sheath; while, for the same reason, the end of the pencil which contains the ordinary lead is not cumbrous nor clumsy, but can be readily held between the fingers, just as an ordinary pencil is."

Having thus described his invention, Reckendorfer claims, —

" 1st, A pencil composed of a wooden sheath and lead core, having one end of the sheath enlarged and recessed to constitute a receptacle for an eraser, or other similar article, as shown and set forth.

" 2d, A pencil, the wooden case of which gradually tapers from its enlarged and recessed head towards its opposite end for the whole or a portion of its length, substantially as shown and described."

The points we propose here to discuss are two: —

*First*, Is the article patented by the plaintiff and his assignor, and for the infringement of which patents this action is brought, a patentable invention within the laws of the United States?

*Second*, Is it within the power of the courts to examine and determine this question? or is the decision of the Commissioner of Patents, when, by issuing a patent, he decides that the invention is patentable, final and conclusive on the point?

The plaintiff contends that the decision of the commissioner is conclusive upon the point of invention; and that the question, as distinct from that of want of novelty, is one not open to the judgment of the court. In the natural order of things, this question is the first one to be examined; for, if it shall appear that the contention of the plaintiff is correct in this respect, the question in regard to the patentability of the instrument now before us will not arise. The point will have been decided for us, and by a controlling authority.

The "act to revise, consolidate, and amend the statutes relating to patents and copyrights," passed July 4, 1836 (5 U. S. Stat. 118), is the act regulating this case.

By the sixth section thereof it is enacted, "that any person having invented or devised any new and useful art, machine, manufacture, or composition of matter, not known or used by others before his invention or discovery thereof, and not at the time of his application for a patent in public use, or on sale with his consent or allowance as the inventor or discoverer, and shall desire to obtain an exclusive property therein, may make application in writing to the commissioner, expressing such desire; and the commissioner, on due proceedings had, may grant a patent therefor. . . . He shall make oath that he believes himself to be the first inventor or discoverer thereof, and that he does not know or believe that the same has ever before been used."

Looking at this section alone, it may be safely said no one is entitled to a patent unless (1) he has discovered or invented an art, machine, or manufacture; (2) which art, machine, or manufacture, is new; (3) which is also useful; (4) which is not known or patented as therein mentioned. It is not sufficient that it is alleged or supposed, or even adjudged, by some officer, to possess these requisites. It must, in fact, possess them; and that it does possess them the claimant must be prepared to establish in the mode in which all other claims are established; to wit, before the judicial tribunals of the country.

The seventh section of the act (p. 120) provides, that on the filing of any such application, &c., and the payment of the duty required by law, the commissioner shall make, or cause to be made, an examination of the alleged new invention or

discovery; and if, on such examination, it shall not appear to the commissioner that the same has been invented or discovered by any other person in this country prior to the alleged discovery, or patented or described in any foreign publication, or been in public use or on sale with the consent of the applicant, and if he shall be of the opinion that the same is sufficiently useful and important, the commissioner shall issue a patent therefor.

Before the commissioner is authorized to issue a patent, it must appear to him that the claimant is justly entitled to a patent; *i.e.*, that his art, machine, or manufacture, possesses all the qualities before mentioned. The commissioner must also be satisfied, that, if it possesses these qualities, it is sufficiently useful and sufficiently important to justify him in investing it with the *prima facie* respect arising from the governmental approval. These restrictions are wise and prudent; are intended to secure at least a probable advantage to those who deal with the favorites of the government; for they may justly be so termed who receive the exclusive right of making or using or vending particular arts or improvements.

It is nowhere declared in the statute that the decision of the commissioner, as to the extent of the utility or importance of the improvement, shall be conclusive upon that point; but, in the section just quoted, it is placed in the same category with the want of novelty and the other requisites of the statute; and it is expressly conceded by the appellant that the judgment of the commissioner on the question of novelty is not conclusive, but that that point is open to examination. On that subject the practice of the courts is uniform in holding it to be subject to inquiry.

The plaintiff's counsel, in his brief, put his argument in this form : " The commissioner, then, passes on these questions : (1.) Did the applicant himself make the invention ? This question is settled by his oath." This is true to the extent and for the purpose of issuing a patent, and to this extent only. When the patentee seeks to enforce his patent, he is liable to be defeated by proof that he did not make the invention. The judgment of the commissioner does not protect him against the effect of such evidence. (2.) The counsel says, " Was the invention

new? . This question is solved by the examination required by the act." To the same extent only. The defence of want of novelty is set up every day in the courts, and is determined by the court or the jury as a question of fact upon the evidence adduced, and not upon the certificate of the commissioner. (3.) The counsel says again, "Is the invention sufficiently useful and important? This the commissioner settles for himself by the use of his own judgment. It is a question of official judgment." These questions are all questions of official judgment, and are all settled by the judgment of the commissioner. His judgment goes to the same extent upon each question. He determines and decides for the purpose of issuing or refusing a patent. When the patent is sought to be enforced, the questions, and each of them, are open to judicial examination. We see many reasons why all the questions of invention, novelty, and prior use, should be open to examination in each case; and such we believe to be the course of the authorities, and practice of the courts.

A reference to some of the most recent cases, and to those decided by this court, will be sufficient. A review of all the cases in this court, and the various circuit courts where this question has been alluded to, will not be profitable.

In *Hotchkiss* v. *Greenwood*, 11 How. 248, a patent had been granted for a "new and useful improvement in making door and other knobs, of all kinds of clay used in pottery and of porcelain," by having the cavity in which the screw, or shank, is inserted, by which they are fastened, largest at the bottom of its depth, in form of a dovetail, and a screw formed therein by pouring in metal in a fused state. The precise question argued in this court and decided was of the patentability of this invention, and it was held not to be patentable. The only thing claimed as new was the substitution of a knob made of clay or porcelain for one made of wood. This, it was said, might be cheaper or better; but it was not the subject of a patent. The counsel for the defendants, in their points, there say, "The court now is called upon to decide whether this patent can be sustained for applying a well-known material to a use to which it had not before been applied, without any new mode of using the material, or any new mode of manufacturing the article

sought to be covered by the patent." Mr. Justice Nelson delivered the opinion of the court to the effect already stated. Mr. Justice Woodbury dissented, not upon the question of the power of the court to pass upon the validity of the patent, but rather in regard to the manner in which the facts were submitted to the jury.

In *Stimpson* v. *Hardman*, 10 Wall. 117, it was decided that the engraving or stamping of the figure upon the surface of a roller for pebbling leather by pressure, where the use previously had been of a smooth roller, required no invention; that it was a change involving mechanical skill merely, and not patentable. Mr. Justice Clifford dissented from the majority of the court, but expressly says that the question of patentability is for the decision of the jury, and not for the court, upon a bill of exceptions. The majority of the court held that the question could be considered upon a bill of exceptions; and no one claimed that the decision of the commissioner concluded the question.

In *Hailes* v. *Van Wormer*, 20 Wall. 353, the question of the patentability of certain improvements in stoves was largely discussed in this court upon appeal from the Circuit Court for the Northern District of New York. It was held, that, if a new combination produces new and useful results, it is patentable, though all the constituents of the combination were known and in use previous to the combination; but the results must be the product of the combination, not a mere aggregate of several results, each the complete product of one of the combined elements. It was held that the facts there present did not create a compliance with this principle; and the judgment, that the plaintiff's bill be dismissed, was affirmed.

In *Rubber Tip Pencil Co.* v. *Howard*, 20 Wall. 498, the same principle was affirmed. In delivering the opinion, the Chief Justice says, " The question which naturally presents itself for consideration at the outset of this inquiry is, whether the new article of manufacture claimed as an invention was patentable as such: if not, there is an end of the case, and we need not go farther." He makes a careful examination of the claim, and concludes that there is nothing patentable in the character of the invention. The decree of the court below dismissing the bill was unanimously affirmed upon that ground.

In *Smith* v. *Nichols*, 21 Wall. 115, an elaborate opinion to this same effect was delivered by Mr. Justice Swayne, and concurred in unanimously by the court. The only question discussed is the patentability of the invention.

*Hicks* v. *Kelsey*, 18 Wall. 670, is a similar case. To this rule, the case of *Lyman* v. *Osborne*, 11 Wall. 516, cited by the defendant, is no exception. The remarks there made are chiefly upon the subject of reissues, and are in accordance with the principles above set forth. Even as to reissues, their conclusiveness is limited to questions of fact, and is accompanied by the statement that they are re-examinable in court, when it is apparent upon the face of the patent that the commissioner has exceeded his authority, or there is such a repugnance between the old and the new patent that it must be held as a matter of legal construction that the new patent is not for the same invention as that embraced and secured in the original patent. Pp. 543, 544.

We do not attach much significance to the fact that the fifteenth section of the act of 1836 allows the defendant to plead the general issue, and to give in evidence, upon thirty days' notice, special matter tending to prove the various matters therein referred to. The statute in that respect was intended to create an easy system of pleading, and to relieve from any doubt the admissibility in that form of the defences specified. The argument, that because, permission is given to prove under the general issue, that the specification does not contain the whole truth, or that it intentionally and deceitfully contains too much, or that the patentee was not the first discoverer, or that it had been in prior use, it follows that proof that there is no invention or discovery at all, or that the invention has no importance, cannot be made, is quite unsound. Proof that there is no invention or discovery strikes at the root of the whole claim. The patent is based on an affirmative fact, of which this is the direct negative. It needed no statute to aid or justify this defence. It is provable when it exists under any general denial, like the fact of not guilty or *non-assumpsit* in cases where guilt or a promise is first to be established.

Upon the proposition that the decision of the commissioner on the question of invention, its utility and importance, is con-

clusive, and that the same is not open to examination in the courts, we are unanimously of the opinion that the proposition is unsound. His decision in the allowance and issue of a patent creates a *prima facie* right only; and, upon all the questions involved therein, the validity of the patent is subject to an examination by the courts.

We come, then, to the questions, Does the article patented by Lipman, and improved by Reckendorfer, involve an invention? or is it a product of mechanical skill or a construction of convenience only?

The article presented is for the performance of mechanical operations, to produce mechanical results, and is a mechanical instrument as much as a brush, a pen, a stamp, a knife, a file, or a screw. Whether it is styled a manufacture, a tool, or a machine, it is an instrument intended to produce a useful mechanical result; and the question presents itself, Does it embody any new device, or any combination of devices producing a new result?

In the first place, what is not claimed by the specification of Lipman is to be observed. " I do not claim," he says, " the use of a lead-pencil with a piece of rubber attached at one end." Of course he does not claim a lead-pencil as his invention, nor the use of a strip of india-rubber for erasure. Each of these articles had been in long and general use. But he claims as his invention " the combination of the lead and india-rubber in the holder of a drawing-pencil," in the manner set forth. There is nothing peculiar in the manner set forth. The claim is simply of the combination of the lead and india-rubber in the holder of a drawing-pencil; in other words, the use of an ordinary lead-pencil, in one end of which, and for about one-fourth of its length, is inserted a strip of india-rubber, glued to one side of the pencil. The pencil is to be made in the " usual manner:" *i.e.*, he takes an ordinary lead-pencil, and in this he makes " a groove of suitable size," giving no idea of what he deems a suitable size; and in this groove he inserts a piece of prepared india-rubber, which is glued to one edge of the pencil. " The pencil is then finished in the usual manner; so that, in cutting one end thereof, you have the lead, *B*, and on cutting the other end you expose a small piece of india-rubber,

*C*, ready for use." It is evident that this manner of making or applying the instrument gives no aid to the patent. It must rest where the patentee claims to place it; that is, on the combination.

This combination consists only of the application of a piece of rubber to one end of the same piece of wood which makes a lead-pencil. It is as if a patent should be granted for an article, or a manufacture as the patentee prefers to term it, consisting of a stick twelve inches long, on one end of which is an ordinary hammer, and on the other end is a screw-driver or a tack-drawer, or, what you will see in use in every retail shop, a lead-pencil, on one end of which is a steel pen. It is the case of a garden rake, on the handle end of which should be placed a hoe, or on the other side of the same end of which should be placed a hoe. In all these cases there might be the advantage of carrying about one instrument instead of two, or of avoiding the liability to loss or misplacing of separate tools. The instruments placed upon the same rod might be more convenient for use than when used separately. Each, however, continues to perform its own duty, and nothing else. No effect is produced, no result follows, from the joint use of the two.

A handle in common, a joint handle, does not create a new or combined operation. The handle for the pencil does not create or aid the handle for the eraser. The handle for the eraser does not create or aid the handle for the pencil. Each has and each requires a handle the same as it had and required, without reference to what is at the other end of the instrument; and the operation of the handle of and for each is precisely the same, whether the new article is or is not at the other end of it. In this and the cases supposed you have but a rake, a hoe, a hammer, a pencil, or an eraser, when you are done. The law requires more than a change of form, or juxtaposition of parts, or of the external arrangement of things, or of the order in which they are used, to give patentability. Curtis on Pat., sect. 50 ; *Hailes* v. *Van Wormer*, 20 Wall. 353. A double use is not patentable, nor does its cheapness make it so. Curtis, sects. 56, 73. An instrument or manufacture which is the result of mechanical skill merely is not patentable. Mechanical skill is one thing: invention is a different thing. Per-

fection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable. The distinction between mechanical skill, with its conveniences and advantages and inventive genius, is recognized in all the cases. *Rubber Tip Pencil Co.* v. *Howard*, and other cases, *supra;* Curtis, sect. 72 *b*.

The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union: if not so, it is only an aggregation of separate elements. An instance and an illustration are found in the discovery, that, by the use of sulphur mixed with india-rubber, the rubber could be vulcanized, and that without this agent the rubber could not be vulcanized. · The combination of the two produced a result or an article entirely different from that before in use. Another illustration may be found in the frame in a saw-mill which advances the log regularly to meet the saw, and the saw which saws the log; the two co-operate and are simultaneous in their joint action of sawing through the whole log: or in the sewing-machine, where one part advances the cloth, and another part forms the stitches, the action being simultaneous in carrying on a continuous sewing. A stem-winding watch-key is another instance. The office of the stem is to hold the watch, or hang the chain to the watch: the office of the key is to wind it. When the stem is made the key, the joint duty of holding the chain and winding the watch is performed by the same instrument. A double effect is produced or a double duty performed by the combined result. In these and numerous like cases the parts co-operate in producing the final effect, sometimes simultaneously, sometimes successively. The result comes from the combined effect of the several parts, not simply from the separate action of each, and is, therefore, patentable.

In the case we are considering, the parts claimed to make a combination are distinct and disconnected. Not only is there no new result, but no joint operation. When the lead is used, it performs the same operation and in the same manner as it would do if there were no rubber at the other end of the pencil: when the rubber is used, it is in the same manner

and performs the same duty as if the lead were not in the same pencil. A pencil is laid down and a rubber is taken up, the one to write, the other to erase : a pencil is turned over to erase with, or an eraser is turned over to write with. The principle is the same in both instances. It may be more convenient to have the two instruments on one rod than on two. There may be a security against the absence of the tools of an artist or mechanic from the fact, that, the greater the number, the greater the danger of loss. It may be more convenient to turn over the different ends of the same stick than to lay down one stick and take up another. This, however, is not invention within the patent law, as the authorities cited fully show. There is no relation between the instruments in the performance of their several functions, and no reciprocal action, no parts used in common.

> *We are of the opinion, that, for the reasons given, neither the patent of Lipman nor the improvement of Reckendorfer can be sustained, and that the judgment of the Circuit Court dismissing the bill must be affirmed.*

MR. JUSTICE STRONG dissenting.

I dissent from so much of the opinion of the majority of the court as holds that the instrument or manufacture described in the patents exhibits no sufficient invention to warrant the grant of a patent for it.

MR. JUSTICE DAVIS and MR. JUSTICE BRADLEY also dissented.