## Case No. 6,423.

HERRING v. GAS CONSUMERS' ASS'N.
[See 9 Fed. 556.]

## Case No. 6,424.

HERRING et al. v. NELSON et al.
SAME v. GAGE et al.

[14 Blatchf. 293; 3 Ban. & A. 55; 12 O. G. 753; Merw. Pat. Inv. 459; 10 Chi. Leg. News, 260.] [1]

Circuit Court, N. D. New York. Sept. 10, 1877.

PATENTS—IMPROVEMENT IN COOLING AND DRYING MEAL—REISSUE—COMBINATION OF FEWER ELEMENTS — NOVELTY — REJECTED APPLICATION AS EVIDENCE OF USE.

1. The first claim of reissued letters patent granted to John Deuchfield, January 16th, 1872, for an "improvement in cooling and drying meal," and extended, April 17th, 1872, for seven years from April 20th, 1872, (the original patent having been granted to said Deuchfield April 20th, 1858), namely, "The arrangement and combination of the suction fan, G, and the spout, I, with the meal-chest, D, receiving the meal from the grinding stones, and provided with a conveyor shaft, F, and elevator F', substantially as and for the purpose set forth," is not subject to the objection that it is for a different invention from that for which the original patent was issued, although the original patent claimed only a combination which embraced the elements composing the combination claimed in said first claim with other elements.

[Cited in Kerosene Lamp Heater Co. v. Littell, Case No. 7,724; Christman v. Rumsey, Id. 2,704; Blackman v. Hibbler, Id. 1,471; Atwood v. Portland Co., 10 Fed. 287; Bignall v. Harvey, 4 Fed. 334; Wilson v. Coon, 6 Fed. 620; Smith v. Merriam, Id. 718; Dederick v. Cassell, 9 Fed. 308; Gage v. Herring, 107 U. S. 641, 2 Sup. Ct. 820.]

2. The combination of machinery for cooling meal, in the process of converting grain into flour, with machinery for preventing the waste of meal, constitutes a patentable combination, and not a mere aggregation.

[Cited in Johnson v. Flushing & N. R. Co., Case No. 7,384.]

3. A patent for a combination of old elements may be reissued for a combination of fewer elements than were contained in the combination originally claimed.

[Cited in Hoffman v. Young, 2 Fed. 77.]

4. The decision in Gill v. Wells, 22 Wall. [89 U. S.] 11, explained.

5. A patent, to be overthrown on the question of novelty, must be overthrown by clear and satisfactory proof.

[Cited in Kittle v. Hall, 29 Fed. 514.]

6. A rejected application for a patent is not evidence that the thing described was ever used, nor is such description a patent or a publication, within the statute.

[These were bills in equity by James W. Herring and others against Willis S. Nelson and others and against William G. Gage and others for infringement of a patent.]

George F. Comstock and James A. Allen, for plaintiffs.
Henry R. Selden, for defendants.

JOHNSON, Circuit Judge. The bills, in these causes, were exhibited by the plaintiffs, as assignees, for the county of Oswego, of

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 3 Ban. & A. 55; and here republished by permission. Merw. Pat. Inv. 459, contains only a partial report.]

certain reissued and extended letters patent, originally granted to John Deuchfield, April 20th, 1858, and numbered 19,984, for the term of fourteen years. The letters patent were reissued to Deuchfield, January 16th, 1872, and were extended, April 17th, 1872, for a further term of seven years from the time of the expiration of the original and reissued patent, April 20th, 1872. The defendants are charged with infringing the first claim of the reissued patent. In defence, it is insisted that the reissued letters patent are not for the same invention as the original patent, and that new matter has been introduced into the specification, contrary to the provisions of section 53 of the patent act of July 8, 1870 (16 Stat. 205). In the second place, it is claimed that the patentee was not the first inventor of what, if anything, was new in the invention claimed under the first claim of the reissued patent. This position is sought to be sustained by proof, 1st, that some one else made the invention, if any; 2d, by proof of several patents which are claimed to anticipate the Deuchfield patent; and, 3d, by proof of what is alleged to have been the prior use, in various instances, of that which is claimed as the invention of Deuchfield.

The reissued patent, number 4,712, dated January 16th, 1872, is for an alleged new and useful "improvement in cooling and drying meal," which Deuchfield claimed to have invented. The amended specification annexed thereto states that Deuchfield has "invented a new and improved arrangement of means for cooling and drying meal," and declares the invention to consist in "the peculiar arrangement of a suction fan, conveyor or conveyors, and elevators," as thereinafter described, "whereby the meal, during its passage from the grinding stones to the bolts, is thoroughly dried and cooled within a limited space, the whole forming a simple and economical device." The specification is accompanied by lettered drawings, which are referred to in the description: "A represents mill-stones, and A' are the curbs. The stones are arranged in the ordinary way. B represents the bed on which the stones are placed; C represents the spouts which convey the meal from the stones; and D is a chest which is placed horizontally on the flooring, E, and with which the blower ends of the spouts, C, communicate, as shown at a in both figures. Within the chest, D, a longitudinal shaft, F, is placed, said shaft having a spiral flanch, b, on it, as shown clearly in Fig. 1. The chest, D, is equal in length to the bed, B, so that all the spouts, C, of the several stones, A, may communicate with it. Within the chest, D, there is also placed a zig-zag partition, E, provided with openings, c, having slides, d; and with one end of the chest, D, elevators, F', communicate, said elevators discharging their contents at e, as shown in Fig. 2. G is a fan, which is placed within a suitable box, H. The box, H, communicates with a spout, I, the lower end of which communicates with one end of the chest, D, as shown at f. The upper end of the spout, I, communicates with one end of a chest, J, as shown at g. The chest, J, contains a longitudinal shaft, K, having a screw or spiral flanch, h, on it, as plainly shown in Fig. 1, and, within the chest, J, a series of vertical plates, i, is placed and arranged, as clearly shown in Fig. 1, to form a zig-zag passage, as indicated by arrows, 1. The end of the chest opposite to that where the spout, I, communicates, is provided with an opening, j. Both shafts, F, K, are rotated by

---

[Drawings of Reissue Patent No. 4,712, published from the Records of the United States Patent Office.]

Fig. 1.

Fig. 2.

any proper means, in the direction indicated by the arrows, 2." The operation is next described, as follows: "The meal passes from the stones, A, down the spouts, C, and into the lower part of the chest, D, and is conveyed by the spirally flanched shaft, F, into the elevator, F', the shaft, F, which is a conveyor, moving the meal in the direction indicated by the arrows, 3. The meal is carried up by the elevators and discharged, at e, directly into the bolts or into troughs, and may be conveyed by hopper-boys, or any suitable conveying device, into the bolts. While the meal is thus passed through the stones, A, spouts, C, and the chest, D, a suction blast is produced by the fan, G, said blast absorbing the moisture or vapor which the meal contains, and which is heated or warmed by the friction of the stones, A. The meal, therefore, is dried and cooled, and, in consequence of the time consumed during its passage through the spouts, C, and chest, D, will be perfectly acted upon by the blast, so that all free moisture will be absorbed. A portion of the finer and lighter particles of flour will follow the blast, and will be ejected up through the spout, I, and through the serpentine or winding-passage formed by the parts, i, and will settle in the outer end of the chest, J, and be conveyed by the conveyor or flanched shaft, K, to a spout, j, through which it falls into the elevators, F', and unites with the meal which is received by the elevators direct from the chest, D." The specification proceeds: "This compound arrangement for operating on the meal while passing through the chest, D, and on the escaped flour in the chest, J, returning the latter to the elevators, while it is extremely well adapted for large flouring mills running at high speeds and with a strong suction blast, may not be either necessary or even practicable in all cases. When the grinding friction evolves only a moderate degree of heat, the chest, J, and its apparatus, may be dispensed with, for, the blast being moderated to correspond, so small a quantity of the fine flour will be drawn through the spout, I, that such flour may be ejected on the mill floor, and may be disposed of in any convenient way, so as to enter the bolts. I do not claim forcing a current of air between a pair of mill stones, while the same is in operation, for the purpose of keeping the stones in a cool state, and preventing the heating of the grain, for, such means, although not very efficient, have been previously used; but I am not aware that parts arranged as herein shown. so as to allow the meal to be subjected to the blast during its entire, or nearly entire, passage from the stones to the bolts, and insure the perfect drying and cooling of the meal, have been previously used. I claim, therefore, as new, and desire to secure by letters patent, 1. The arrangement and combination of the suction fan, G, and spout, I, with the meal chest, D, receiving the meal from the grinding stones,

and provided with a conveyor shaft, F, and elevator, F', substantially as and for the purpose set forth; 2. The arrangement and combination of the chests, D, J, shafts, F, K, elevators, F', fan, G, and spout, I, substantially as and for the purpose herein shown and described."

The specification annexed to the patent as originally issued April 20th, 1858, differed in some respects from that attached to the reissued patent. In the original, Deuchfield declares himself to have invented a new and improved arrangement of means for cooling and drying meal *during its passage from the grinding stones to the bolts*, the underlined words being omitted in the reissue. In the original it is declared that the invention consists in the peculiar arrangement of a suction fan, conveyors and elevators. The reissue, by the insertion of the word "conveyor," in the singular, is made to read "conveyor or conveyors," and thus the way is prepared for the omission of one feature of the combination originally claimed. This severance of the combination is further prepared by the paragraph of the reissued specification, commencing with the words, "This compound arrangement," and ending with the words "enter the bolts." The proposed severance is consummated by the insertion of the first claim, under which, as framed, are claimed only "the arrangement and combination of the suction fan, G, and spout, I, with the meal chest, D, receiving the meal from the grinding stones, and provided with a conveyor shaft, F, and elevator, F', substantially as and for the purpose set forth." The other and original claim, now the second, embraces the arrangement and combination of both chests, D and J, both (conveyor) shafts, F and K, and the elevators, fan and spout connected therewith, substantially as and for the purposes therein shown and described. Under the patent as originally issued, it is, therefore, quite plain, that no infringement could be made out without showing a use of the complete combination, with all its elements, for that was the thing patented. No device was claimed as the invention of the patentee, which entered into the combination. The invention claimed consisted only in the combination, and, in this sense, at least, it is true, that, in such a case, the combination disappears when any element is omitted, as was said by Mr. Justice Nelson in Vance v. Campbell, 1 Black [66 U. S.] 427, and as since has been frequently repeated.

Under the first claim of the reissued patent, if it be valid, an infringement may be made out by showing a use of the combination specified in that claim, which omits a number of elements combined in the second or original claim. Under the first claim, therefore, the operation of the reissued patent is greatly enlarged beyond that of the original patent. It, according to its terms, entitles the patentee to exclude everybody

from using the combined elements of that claim; while the original claim would be effectual only to exclude the use by others of the elements of the first claim when combined with the other elements of the original claim. The learned counsel for the plaintiffs is, therefore, in error when he contends that the change produced by the introduction of the first claim of the reissued patent is a narrowing of the claims of the patentee, by abandoning to the public the use of a part of that which, under the original claim, was secured to the patentee. Such is not the operation or effect of that which has been done by the alteration of the specification. Under the original claim, two things were necessary to an infringement, each of which was expressed in the single original claim. Under the reissue and its first claim, one only of those two things being done works an infringement. So that the enlargement is of the right of the patentee; the narrowing is of the right of the public.

It is further claimed, on the part of the plaintiffs, that the claim under the original specification was not of a true combination, producing a result from the co-action of the elements, but that the results were the consequence of the successive and independent action of the parts, each producing its own result. In a certain sense, this would seem to be true; because, the cooling of the meal may be conceived of as one independent result, and the saving and restoring to the common mass that part of the meal which, in the cooling process, has been mechanically separated from the rest, may, also, be conceived of as another independent result. But, this, in my opinion is an over-refinement, not required by the principles of the patent law. When regarded as part of a practical improved arrangement of means for converting grain into flour, both results, the cooling and the saving, contribute to the one common result—cooling without waste, and thus getting the largest practicable amount of merchantable flour. It cannot be doubted, that, if the whole process of reducing grain to flour were new, the complete machinery employed, even including the combined Deuchfield device, could be included and maintained in a single patent, or in a single combination. This view is, as I understand it, supported by the decision of Mr. Justice Curtis, in Forbush v. Cook [Case No. 4,931], cited in Curt. Pat. § 111, note 2. The learned judge says: "To make a valid claim for a combination, it is not necessary that the several elementary parts of the combination should act simultaneously. If those elementary parts are so arranged that the successive action of each contributes to produce some one practical result, which result, when attained, is the product of the simultaneous or successive action of all the elementary parts, viewed as one entire whole, a valid claim for thus combining those elementary parts may be made." In the original arguments

on the part of the plaintiffs, the combination was sought to be sustained as a patentable combination; but, in the further argument, the attempt is made to treat this arrangement of means claimed in the original patent, and in the second claim of the reissued patent, as not patentable, upon the ground that it constitutes only an aggregation of several results, within the doctrine of Hailes v. Van Wormer, 20 Wall. [87 U. S.] 353, 368, and Reckendorfer v. Faber, 92 U. S. 347; but, what has been already said on that topic seems to me to be sufficient to show, that the combination for which the original patent was granted was not liable to the objection, that the results of the combination were an aggregate of separate results, and not the joint product of the several elements of the combination. The case is one not of juxtaposition merely, but of combination, in the sense of the law.

The next question to be considered is that which arises upon the consideration of the two patents, with their specifications and drawings—whether the reissued patent is for the same invention as that for which the original was issued, and thus within the authority of the commissioner of patents, under section 53 of the patent act of 1870. That the original patent was inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming, as his own invention or discovery, more than he had a right to claim as new, and that the error arose by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, has been conclusively established by the action of the commissioner, to whom alone the decision of these questions belonged. Seymour v. Osborne, 11 Wall. [78 U. S.] 516, 543–545. But, this decision leaves undetermined the question whether "there is such a repugnancy between the old and the new patent, that it must be held, as matter of legal construction, that the new patent is not for the same invention as that embraced in the original patent." I purposely omit the additional word used in the decision cited, which says, "embraced and secured in the original patent," because, one of the very plain grounds of reissue specified in the statute is, that the original patent fails to secure the invention, by reason of the imperfection of the claim or description of the invention. Curt. Pat. § 282b, note 1, and cases there cited. Moreover, the statute, in the section cited, allows the new patent to be issued with corrected specifications, and, in case of a machine patent, reference to be had, for this purpose, to the drawings and model, the only prohibition, in that behalf, being, that they may only be amended by each other. There is, also, a general prohibition, that no new matter shall be embraced in the specification. A further provision is made, that, where there is neither model nor drawing, amendments may be made upon proof satisfactory to the

commissioner that such new matter or amendment was a part of the original invention. It results, from these provisions, taken together, that what is found in the specification drawing or model of the original patent may be embraced in the reissued patent (Seymour v. Osborne, 11 Wall. [78 U. S.] 516); and that, in redescribing his invention, the patentee is not rigidly confined to what was described before, but may include in the new description whatever else was suggested or substantially indicated in the old, provided it was embraced in the invention as actually made and perfected. Differences in the description and claims of the old and the new specifications are not the tests of substantial diversity, but the description may be varied, and the claim restricted or enlarged, provided the identity of the subject matter of the original patent is preserved. Within this range, whatever change is required to protect and effectuate the invention is allowable. Parham v. American Buttonhole Co. [Case No. 10,713]; Battin v. Taggert, 17 How. [58 U. S.] 74. In the case of Stevens v. Pritchard [Case No. 13,407], Mr. Justice Clifford has stated the doctrine with great clearness and precision, so as to afford a plain guide to the application of the law as to reissues. The learned justice says: "Reissued patents are presumed to be for the same invention as the original, unless the contrary appears. Matters of fact are not open, under such an issue, in a suit for infringement. Instead of that, the conclusion in such case must always be in favor of the validity of the reissued patent, unless it appears, upon a comparison of the two instruments, that the reissue, as matter of legal construction, is not for the same invention as the original. Surrenders are allowed, in order that what was imperfect before may be made perfect, and in order that what was before ambiguous may be made clear and certain; and, for that purpose, the patentee may add whatever was substantially suggested or indicated in the original specifications, drawings, or patent office model. New features may not be introduced, for the reason that every interpolation of the kind is forbidden by the act of congress. Errors and defects may, however, be corrected, under the conditions specified; and the prohibition, that new features shall not be introduced, must not be understood as taking away the right to include in the reissue whatever was substantially suggested or indicated in the surrendered specifications, drawings, or patent office model."

In the case now before the court, the drawings attached to the reissued patent are the same as were annexed to the original. The mechanical structure, so far as the machine comes under the first claim of the reissue, is exactly the same as was described in the original specification, up to that point. Nor is anything added to the description of the further mechanical structure of the machine, as originally described. Looking at the mode of operation of the machine as set forth in the original specification, the reissued patent makes no alteration in it, so far as the machine falls under the first claim of the reissue. The whole controversy upon the question turns upon this. The mechanical arrangements are all unchanged; the mode of operation of the several parts is correctly described; the results of the action of the whole are correctly stated; and it is obvious, that, while the combined action of all the parts produces the complete result, yet the mere cooling and drying of the meal is the result of that part of the machinery which is now covered by the first claim of the reissued patent. All that has been added is the new claim, which embodies in words that which the specifications and drawings could not fail to disclose to any intelligent examination. The verbal addition to the specification, of the paragraph which declares that the collection of the separated fine part of the meal and its return to the general mass may or may not be made, as circumstances make desirable, is not, in my opinion, new matter, within the prohibition of the statute. If, to the original specification, only a new claim had been added, substantially like that which forms the first claim of the reissued patent, the legal effect of the original patent would have been the same as that now asserted for the reissued patent. The remarks with which Mr. Justice Clifford commences his opinion, in the case, already cited, of Stevens v. Pritchard, I think, substantially sustain this view. The learned justice says: "Cases arise where a patentee, having invented a new and useful combination, consisting of several elements which, in combination, compose an organized machine, also claims to have invented new and useful inventions, consisting of fewer numbers of the same elements, and, in such cases, the law is well settled, that, if the several combinations are new and useful, and will severally produce new and useful results, the inventor is entitled to a patent for the several combinations, provided he complies with the requirements of the patent act, and files in the patent office a written description of each of the alleged new and useful combinations, and of the manner of making, constructing and using the several inventions. He may, if he sees fit, give the descriptions of the several combinations in one specification, and, in that event, he can secure the full benefit of the exclusive right to each of the several inventions, by separate claims, referring to the specification for the description of the invention, without the necessity of filing separate applications for each of the inventions. Separate descriptions of the respective inventions in one application are as good as if made in several applications; but the claims must be separate, and it would follow, that, if the patentee, by inadvertence, accident or mistake, should fail to claim any one of the described combinations, he might surrender

the original patent and have a reissue, not only for the combinations claimed in the original specification, but for any which were so omitted in the claims of the original patent." For this proposition is cited as authority the case of Gill v. Wells, 22 Wall. [89 U. S.] 24. It is mainly upon what is said in that case that the defendants rely to sustain their proposition that the reissued patent is void, as not for the same invention as the original patent. The position is this, that, where a patent is for a combination of old elements producing a new and useful result, the invention consists only in the combination, and, therefore, when one element is relinquished, the combination being gone, the invention is gone likewise. This proposition is, in a certain sense, true and accurate, in reference to a patentee of such a combination bringing an action for an infringement. There is no infringement when all the elements are not employed, leaving out of view the consideration of equivalents, which, for the present purpose, is not material. Numerous cases sustain this view, and the law is unquestioned. Vance v. Campbell, 1 Black [66 U. S.] 427; Prouty v. Ruggles, 16 Pet. [41 U. S.] 336; Gould v. Rees, 15 Wall. [82 U. S.] 187; and many other cases. But, upon the doctrine of these cases in respect to actions for infringements, it is sought to establish a distinction between patents for combinations of old elements and all other patents, in regard to reissues, and to deny the power to reissue such a patent for a combination of any fewer elements than were contained in the original combination. Now, the patent act makes no such distinction. Its terms are general and relate alike to all patents. The position is set up and rests upon this argument: The reissue must be for the same invention; this consists in the combination, which disappears when one element is omitted. But, this argument, true or unsound, does not apply to a case in which, among the old elements, some are single and some are sub-combinations, entering into the general and larger combination. This doctrine was necessarily affirmed, because acted upon in judgment, in the Corn-Planter Patent, 23 Wall. [90 U. S.] 181. To the opinion of the majority of the supreme court in that case was opposed the able statement of the learned judge who delivered the opinion of the court in Gill v. Wells, 22 Wall. [89 U. S.] 1, of the grounds on which he had, in that case, maintained the view that is now sought to be applied to and to control the decision of the present case. But the majority of the court did not apply those views to the decision of the Corn-Planter Case [supra], but held that the reissues were for things contained within the machines and apparatus described in the original patents, and were, therefore, not subject to the objection of diversity of invention.

In Gill v. Wells, above cited, the reissues omitted one well described ingredient of the patented combination, and substituted in its place several other devices, not equivalent for the omitted element, nor claimed to be such, and the court held that this was inadmissible, and that the reissues were not for the original invention.

The case of Vance v. Campbell, before cited, does not, as a judgment, settle any doctrine material to the question of reissues. There was no reissue in the case, and the decision granting a new trial was put upon the ground that the plaintiff had been improperly excluded as a witness.

In Russell v. Dodge, 93 U. S. 460, the only point decided was, that the alleged invention or inventions contained in the original and reissued patents lacked novelty, and were, therefore, not patentable.

After a careful examination of all the cases which have been cited, I am of opinion, that, upon a comparison of the original and reissued patents, it cannot be held, as matter of legal construction, that the reissued patent is for an invention not contained in the original patent, and that the reissued patent is, therefore, not void upon that ground. The decision of the patent office in granting the reissue covers the grounds of fact upon which the action of the commissioner could, in the proceedings before him, have been contested.

The reissued patent being valid upon its face, the presumption is, that the patentee was the first inventor of that which the patent purports to secure. Seymour v. Osborne, 11 Wall. [78 U. S.] 516; Tucker v. Tucker Manuf'g Co. [Case No. 14,227],—Clifford, J. And this is not a mere formal presumption, but, if to be overthrown by parol testimony, must be overthrown upon clear and satisfactory proof. A case of doubt upon the evidence is not enough, for that leaves the presumption operative. Brady v. Atlantic Works [Id. 1,794].

The prior patents adduced by the defendants to show an anticipation of the plaintiffs' invention do not appear to me, in their principles and modes of operation, to approach near enough to the plaintiffs' invention to require particular comment. No one of them shows a current of air created by a suction fan, and drawn through the opening of the mill stones, down the meal spouts, and into and along the enlarged meal box shown in the drawings, and the conveyor shaft, and accompanying the meal in its progress to the elevators, and, by its operation, taking away the heat and moisture of the meal, which is the substance of the plaintiffs' invention.

The rejected application of Mann for a patent is not to be considered as a bar to the patent represented by the plaintiffs. Corn-Planter Patent, 23 Wall. [90 U. S.] 181. Assuming its similarity to the Deuchfield device, the rejected application does not make out that the thing described was ever used; nor is such a description a patent or publication within the statute.

The defence of want of novelty, by reason

of the alleged prior invention by one Stryker, does not appear to me to have any serious basis. The story which he tells of Deuchfield's application to him, at a grocery store, on a Sunday evening, February 1st, 1857, to contrive some way of keeping the mill (the Uhlhorn) dry, that, after a brief conversation, Deuchfield employed him to come on the next day, to begin the work, and that, on the Monday morning, he went to the mill and made the drawing which he produces, dated and signed by him on that day, as he testifies, and then proceeded with the work, having, as his guide, this working drawing, which represents the mill as having five run of stones, while, upon the overwhelming proof, it never had but four, makes a story incredible enough, upon the face of it, to be disbelieved. But, it is shown to be necessarily untrue, by the evidence of several persons with whom Deuchfield had previously conversed respecting a plan which he had devised for drying the meal and thus freeing the mill from the injurious effect of moisture, and, also, by his consultation with the owners of the mill, and the final consent on their part that he might proceed to put in the contrivance which he had devised, as he proceeded to do on the 2d of February, 1857, employing Stryker for the purpose. It is true, that Deuchfield was not called as a witness, but the proof shows that he was a man broken in health and aged at the time of the examination, and, as there was other independent proof upon the point, satisfactory in character, the omission is not material. It only calls for close scrutiny of the question.

The other questions of anticipation rest upon oral proof, either of the time when certain contrivances were introduced into particular mills, or of the substantial identity of such devices with that covered by Deuchfield's invention.

I am satisfied, upon the most careful examination which I am capable of, that, in each case, the weight of the oral evidence is with the patentee, and that, without the presumption arising from the patent, I should be constrained to hold, upon these questions, with the plaintiffs. But, I can with difficulty understand how it can be supposed, that, in any of the cases of alleged anticipation, the proof for the defence can be taken to go beyond a case of doubt; and, in such a case, the presumption arising from the patent must stand. To discuss these several questions in detail can be of no public service, and I have not the time to devote to it.

The infringements by the defendants are clearly made out by the testimony on the part of the defendants, as well as by that of Bignall on the part of the plaintiffs. In each case, the first claim of the reissued patent is infringed by devices, in all material respects, like those contained in the reissue, and embracing all the elements of that combination. That the defendants have added

something to the devices combined by the patentee does not enable them to use his combination without being answerable.

A decree in favor of the plaintiffs must be made in the usual form, restraining further infringement, establishing the reissue, and directing a reference to a master to take an account and ascertain the profits made by the defendants, and the damages suffered by the plaintiff, by reason of such infringements. Either party has leave to apply for further directions, and, upon the coming in and confirmation of the master's report, for a final decree.

[See Case No. 6,422, and note.

[For another case involving this patent, see Bignall v. Harvey, 4 Fed. 334.]