## BUTLER BROS. v. PRATT.

### (Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

### No. 5104.

1. PATENTS ⚖328—VALIDITY—INVENTION.
    The Pratt patent, No. 1,166,629, for an improvement in bracelets, consisting of a series of curved links with a slot at each end, adapted so the same could be worn on a flexible band or united by metal connections, *held* invalid as not showing invention, but only a mechanical improvement over the prior art, etc.

2. PATENTS ⚖22—INVENTION—SUBSTITUTION.
    It is not invention to substitute for one element in an article of manufacture another which performs the same functions in substantially the same way, and accomplishes substantially the same effect.

3. PATENTS ⚖32, 112(3)—VALIDITY—PRESUMPTIONS.
    The presumptions from the issuance of a patent and the commercial success of the patented article cannot sustain the patent, where there was manifest equivalency of functions, and the commercial success was directly attributable to the unique advertising of the article.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit by Henry B. Pratt against Butler Bros. From a decree for complainant, defendant appeals. Reversed, with directions to dismiss the bill.

A. C. Paul, of Minneapolis, Minn. (Lancaster, Simpson & Purdy, of Minneapolis, Minn., on the brief), for appellant.

John E. Stryker, of St. Paul, Minn., for appellee.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This was a suit for infringement of letters patent No. 1,166,629, issued to Henry B. Pratt, January 4, 1916, for improvements in bracelets. The appeal is from a decree sustaining the patent and awarding an accounting.

[1] There are five claims in the patent. The first and fourth claims, which may be regarded as typical, are as follows:

"(1) In a bracelet, a series of oblong metal plates, each plate being formed with a transverse rectilinear slot at each end thereof, and a band passing through all of said slots for uniting said plates."

"(4) In a bracelet, a plurality of oblong metal plates, each plate being curved longitudinally and perforated at its ends, and a flat flexible band passing through said perforations and extending along the inner or concave sides of the plates."

The objects of the patentee are stated in his specifications as follows:

"My invention relates to improvements in bracelets. Its object is to provide an easily assembled and attractive ornament of this kind, having a series of metal links united by a flexible band, which lines said links and overlaps their ends.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"A further object is to provide in a device of this kind a series of links, each of which is shaped to substantially conform to the curvature of the wrist and provided with a panel adapted to display a monogram, initials, or other ornamentation on the outer or convex side thereof.

"This bracelet is peculiarly fitted for use as a 'friendship' or keepsake bracelet, in which the several links or plates are donated or inscribed by sundry friends and thereafter assembled as a complete bracelet."

The character of the band used to unite the links is referred to in claim numbered 2 as "a flat band" and in claims numbered 3 and 5 as a "flexible band."

The patentee entered into a license agreement with a manufacturing company that did an extensive business in making and selling jewelry and a novel and successful advertising campaign began. An appeal was made by illustrated advertisements in prominent magazines and periodicals, and by circulars, addressed especially to young women and girls, showing the adaptability of the links as gifts, engraved with the name or initials of the donor, and the feasibility of adding links together, thus inscribed, until enough would be gathered to make a complete bracelet. In many cases dealers made presents to prospective customers of a single link, perhaps engraved with the name of the donee, and mounted upon a band of velvet ribbon. There was a very considerable sale of these links; the licensee having sold over 2,000,000 of them up to the time of the trial of this suit. The defendants sold bracelet links that were essentially the same as the plaintiffs. They were not sold with a ribbon or other band to pass through the slots in the links, but they were furnished to dealers for display mounted on portions of advertising cards, which were cut into strips or tabs colored and shaped to resemble a black ribbon, passing through the slots in the links and suggesting the use of them on a flexible band, when used as a bracelet, or as a part of a bracelet. Although the use of metal connections between the links of a completed bracelet was urged, the sale of separate links for temporary use upon a band of ribbon, until enough had been accumulated to form the complete bracelet, was obviously a part of the defendant's purposes.

The joining together in a bracelet of separate links, so as to conform the bracelet to the shape of the wrist, has been the subject of many patents antedating plaintiff's. The use of links having the same mechanical structure as those of plaintiff is conceded to be old. The use of flexible bands to unite the links is also conceded to be old. The claims of plaintiff relate to a combination of links, each of which has a slot or perforation at each end and a band that passes through all of the slots or perforations, uniting the links. In the ordinary practical use of the combination, the band has been a ribbon, usually of velvet, that extends along the inner sides of the links, but passing through the transverse rectilinear slots, so as to leave exposed the outer portion of the links between the slots. The plaintiff concedes that many of the features of construction and design adopted by him are not necessary to the mechanical or functional operation of the bracelet, but are adapted merely to give to it a distinct, characteristic, and unique appearance. He regards as among the nonessen-

tial features the links' dimensions and the rectangular shapes of the face of the link, the central panel and the slots. The plaintiff does not claim a patent for the design.

Patent No. 149,879, issued to Murphy and Poolman, August 22, 1873, discloses a bracelet composed of separate links, each of which has passing through it longitudinally a rectangular aperture for the reception of a broad elastic band for the purpose of uniting the links. The function of the band in the Murphy and Poolman patent, as in the bracelet of plaintiff, is obviously, and as is stated in the specifications of the former patent, to connect together, by means of the flat band, the separate members of the bracelet, so as to give more strength than is given by the use of round cords, and to hold the links firmly together along the adjacent ends of the separate links. The arrangement of plaintiff's links, so that the band shall pass beneath the greater portion of a link and then be carried through a transverse slot at the end of the link to the adjoining link, and thence downward through a similar slot in the adjoining link, and so on to the end of the bracelet, while a new arrangement, is only a change of form—an equivalent, so far as functions are concerned—of the connecting band shown in the Murphy and Poolman patent.

[2] As settled by many cases, it is not invention to substitute for one element in an article of manufacture another, which performs the same functions in substantially the same way and accomplishes substantially the same effect. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 Sup. Ct. 502, 61 L. Ed. 1136; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Van Epps v. United Box Board & Paper Co., 143 Fed. 869, 75 C. C. A. 77; Walker on Patents (5th Ed.) § 36.

[3] The presumptions from the issuance of the patent and from the commercial success in the sale of plaintiff's bracelet links are not sufficient to overbear the manifest equivalency of functions between the two patents, and the extent of sales is more directly traceable to the unique advertising the article has received (see Eisenstadt Mfg. Co. v. J. M. Fisher Co., 241 Fed. 241, 154 C. C. A. 161) than to any patentable novelty. This conclusion announced makes unnecessary the determination of other questions presented.

The decree of the lower court will be reversed, with costs, and with directions to dismiss the bill.