36 C.C.P.A. (Patents)

### Application of HOLSLAG.
### Patent Appeals No. 5501.

United States Court of Customs and Patent Appeals.

Dec. 7, 1948.

Harry B. Rook, of Newark, N. J., for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 1 to 11, inclusive, in appellant's application for an alleged invention relating to an arc welding electrode holder. The rejection was based on the grounds that the appealed claims are drawn to aggregations and that they define no invention over the prior art.

Claims 2, 3, and 6 are representative of the appealed claims. They read:

"2. In an arc welding electrode holder comprising two parts separable with respect to each other to receive therebetween a welding electrode, with means for causing said parts to grip the electrode; means carried on at least one of said parts for chipping or cleaning away any slag that may be deposited during the welding operation.

"3. In an arc welding electrode holder comprising two parts separable with respect to each other to receive therebetween a welding electrode, with means for causing said parts to grip the electrode; a chipping device having a relatively sharp edge carried by one of said parts, and a stiff wire brush carried on the other of said two parts.

"6. For use with a foot switch which normally holds an arc welding circuit open when the operator is not welding, an electrode holder having a plurality of devices fastened directly to the metal parts carrying the electrode for cleaning the weld of slag or the like after a welding operation."

The following references were relied on: Heaton 126,544 May 7, 1872; Strong 163,277 May 11, 1875; Nicholson 200,218 February 12, 1878; Freeman (Br.) 15,040 July 4, 1907; Heckman 1,825,314 September 29, 1931; McIntire 1,883,807 October 18, 1932; Jones 2,104,750 January 11, 1938; Nickels 2,162,112 June 13, 1939; Del Bene 2,213,306 September 3, 1940; Rice 2,327,290 August 17, 1943.

Appellant's application discloses a holder designed for holding an arc welding electrode. It comprises two members which are pivoted together in such manner that a welding electrode may be gripped between their outer portions. One or both of the pivoted members also carries a tool useful in treating the weld, such as by chipping or cleaning away slag. The application states that such welding treating tools are frequently misplaced and cannot be quickly located when needed; whereas, if the tools are mounted directly on the electrode holder, in the manner disclosed in appellant's application, they are always immediately at hand when needed.

The reference patents cited show combination tools of various sorts. For reasons which will hereinafter appear, it will be unnecessary to consider the references in detail.

■ All of the appealed claims were rejected on the ground of aggregation, it being the position of the Patent Office tribunals that there is no patentable coaction between the welding electrode holder and any of the various tools mounted thereon.

Counsel for appellant, in their brief, contend that the introductory portion of the appealed claims is merely preamble and that "No Combination Is Set Up Or Claimed." However, for example, appealed claim 2 calls for "In an arc welding electrode holder comprising two parts separable with respect to each other to receive therebetween a welding electrode, with means for causing said parts to grip the electrode." The claim, therefore, calls definitely for two separable parts arranged to receive something between them and, to this extent, imposes a definite limitation on the claim. The allegedly novel element in the final portion of claim 2 is "means carried on at least one of said parts for chipping or cleaning away any slag that may be deposited during the welding operation." That limitation would be indefinite if the "said parts" referred to were not regarded as elements of the combination claimed. Moreover, if the reference to a welding electrode holder and its parts be disregarded, the claim merely calls broadly for a chipping or cleaning means which, of course, is not patentable. Furthermore, the novelty alleged for appellant's idea resides in the fact that the tools are mounted on the welding electrode holder, so that they will be convenient to the weld and cannot be lost. The fact that the tools are mounted on the holder, rather than on separate handles is, therefore, the essence of the alleged invention. Under the related circumstances, the welding electrode holder must be regarded as an element of each of the appealed claims.

It is apparent that appellant's device can never be used as a welding electrode holder and, at the same time, as a cleaning, chipping, or other tool. Furthermore, the use of the device as a welding electrode holder is in no way affected by the fact that it carries a cleaning tool or some other tool, and the use of such tool is in no way affected by the fact that it is mounted on an electrode holder rather than on some other handle or support. In their brief, counsel for appellant assert that the mounting of the tool on the electrode holder affects the weld because it permits cleaning of the weld before cooling. However, the weld could be cleaned as quickly by another tool

if it were close at hand. Appellant's device merely provides a convenient location for the cleaning tool. It does not modify the manner in which the weld is formed or cleaned.

The situation here presented is closely analogous to that in the case of Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719. In that case the alleged invention involved the mounting of an eraser on the end of a lead pencil, and the advantages claimed were similar to those alleged for the present device; namely, convenience and security against loss or absence of the eraser when needed. In holding that there was a lack of patentable coaction between the pencil and eraser, the Court said:

"The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union: if not so, it is only an aggregation of separate elements. * * *

"In the case we are considering, the parts claimed to make a combination are distinct and disconnected. Not only is there no new result, but no joint operation. When the lead is used, it performs the same operation and in the same manner as it would do if there were no rubber at the other end of the pencil: when the rubber is used, it is in the same manner and performs the same duty as if the lead were not in the same pencil. A pencil is laid down and a rubber is taken up, the one to write, the other to erase: a pencil is turned over to erase with, or an eraser is turned over to write with. The principle is the same in both instances. It may be more convenient to have the two instruments on one rod than on two. There may be a security against the absence of the tools of an artist or mechanic from the fact, that, the greater the number, the greater the danger of loss. It may be more convenient to turn over the different ends of the same stick than to lay down one stick and take up another. This, however, is not invention within the patent law, as the authorities cited fully show. * * *"

Other examples of aggregations given by the Court in the case just quoted included a handle having a hammer at one end and a screw driver or tack-drawer at the other; a handle having a rake and hoe at opposite ends, or at opposite sides of the same end; and a lead pencil having a pen on one end. The decision makes it quite clear that the mere juxtapositioning of tools which can be used only one at a time involves nothing more than an aggregation of elements and not a patentable combination.

Counsel for appellant rely on the decision of the Circuit Court of Appeals, Second Circuit, in Sachs v. Hartford Electric Supply Co., 47 F.2d 743, in which the court stated that it is unable to attach a definite meaning to the word "aggregation" and indicated that the refusal of claims on that ground should be abandoned. That decision, however, cannot be considered controlling here, especially in view of the decision of the United States Supreme Court in the case of Reckendorfer v. Faber, supra.

We are of opinion that the appealed claims are directed to mere aggregations of elements, between which there is no patentable coaction, and that the claims were properly rejected for that reason. In view of our conclusion it is unnecessary to consider the further rejection of the claims on the ground of lack of invention over the prior art cited.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.