42 C.C.P.A.(Patents)

**In the Matter of the Application of Thomas A. KRIVANEK and Roy T. Krivanek.**

**Patent Appeal No. 6142.**

United States Court of Customs and Patent Appeals.

July 1, 1955.

As Amended on Petition for Rehearing Sept. 21, 1955.

Gehr & Leonard, Cleveland, Ohio (Ray S. Gehr, Cleveland, Ohio, of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of all claims, 1 to 4, inclusive, involved in appellants' application for a patent for a "Curette."

Claims 1 and 2 are illustrative and read:

"1. A surgical appliance comprising an elongated body structure, a flexible filiform snare loop carried by one end of the body structure, and a magnet structure carried by the other end of the body structure with a smooth surface portion of the magnet structure exposed, the said body structure being of a diameter to be grasped between the thumb and the first two fingers of an operator's hand and having a length and weight for easy and rapid end-for-end reversal by the thumb and fingers while supported by them, whereby the loop and magnet structure of the unitary device are cooperable in rapid alternation to perform complementary steps of a curette function.

"2. A surgical appliance as claimed in claim 1 which also comprises detachable end caps for the body structure which respectively enclose the snare loop and the magnet structure."

The references cited below are: Mason 408,498 August 6, 1889; Beeg 2,196,849 April 9, 1940.

Appellants' device is a surgical tool designed for use in removing metal fragments from wounds and particularly designed for removing such fragments embedded in the eye. It is an elongated structure containing a magnet at one end, and at the other a flexible filament of

metal or other desired material fashioned in the form of a loop or snare. It is of such diameter that it can be easily handled by the operator's fingers, and of such length and weight as to permit rapid end-to-end reversal. In actual use, the magnet is held close to the eye to completely withdraw, or at least surface the particle. When it does not successfully overcome the surface tension of the eye fluid to accomplish complete extraction, the unit is reversed and the snare or loop employed to complete the withdrawal.

The instrument is provided with detachable end caps which, like the body structure, are of a non-magnetizable material.

■ While appellants acknowledge that both the magnet and the snare, as well as their respective uses, are old in the art, they predicate their claims on the theory that their conception and combination of such elements into a single unit involve invention and is accordingly patentable.

The claims were rejected by the examiner as not defining a patentable association of elements in that there is no patentable cooperation between the magnet on one end and the loop on the other, and that the mere convenience achieved in mounting those structurally and functionally distinct units on a common handle would not provide the requisite coaction. In his answer before the Board of Appeals, the examiner stated:

"* * * When the magnet is being used to withdraw an embedded particle from the body of the eye, the snare loop is in a wholly inoperative position and does not in any way affect the functioning of the magnet. It is then as if the snare loop were non-existent. Conversely, when the tool is reversed so that the snare loop can be applied to the surface of the eye, the magnet merely projects into space and, in such position, does not in any way contribute to or modify the operation of the snare loop. It is then as if the magnet were non-existent. While applicants' unitary combined appliance may be easier and more convenient to use than, for example, a conventional magnet instrument held between the second and third fingers and a conventional snare loop held between the third and fourth fingers of the operator's hand, the two instruments to be applied to the eye consecutively (a conventional practice as noted above), this mere convenience is not of itself sufficient to render the claims allowable. It is respectfully submitted that there is no more patentable cooperation between the magnet and the snare loop portions of the present device than existed between the combined pencil and eraser of Reckendorfer v. Faber, 92 U.S. 347, [23 L. Ed. 719], 1876 C.D. 430 or the combined welding electrode holder and slag pick of In re Holslag, 620 O.G. 7, 171 F.2d 323 [36 C.C.P.A., Patents, 753], 80 U.S.P.Q. 139, 1949 C.D. 39, both of which devices were held to be unpatentable for substantially the same reasons as advanced above."

Claims 1 and 2 were further rejected as not defining inventive subject matter in that it is customary in the various arts to mount different types of tools on opposite ends of a common handle, and at the same time provide detachable protective caps for said tools. It was in that connection that the patent references were cited as illustrative thereof. Mason discloses an engraver's tool with a burnisher at one end and a scraper at the other, and provides protective covering caps. The Beeg device is a pocket screw-driver consisting of a longitudinal rod in which screw-driver heads of different sizes can be accomodated, and also has covering caps. In their brief and oral arguments before us, appellants earnestly renew the contentions advanced below, and specifically challenge the applicability of Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719, and In re Holslag, 171 F.2d 323, 36 C.C.P.A., Patents, 753, relied on below.

In the Reckendorfer case, supra, is found the following rule which we think is applicable here:

"The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union; if not so, it is only an aggregation of separate elements."

The board, and we think properly so, saw no significant distinction between the convenience supplied by the pencil and eraser combination in the above case, and that of appellants' device here.

We have given most careful and sympathetic consideration to appellants' arguments, but have been unable to find, as a matter of law, error in the decision of the board.

While we readily agree that the instant device might provide more efficient and speedier means over separate magnet and loop devices, it does not necessarily follow that such a combination is patentable.

Appellants emphasize that the time element involved in the use of their instrument is highly critical and that no such element was involved in either of the cited cases above. It appears, however, that in In re Holslag, supra, the court considered but overruled a somewhat similar contention. While it is true, as pointed out by appellants, that decision involved inanimate objects, we do not see that such fact constitutes a material legal distinction in determining the question of patentability.

While, as noted above, we have sympathetically reviewed the record in light of appellants' contentions, we are unable to agree that the board erred in denying their application. Accordingly, its decision is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.