## MARVEL EQUIPMENT CO. v. MERIT OIL EQUIPMENT CO.

District Court, N. D. Ohio, E. D. January 27, 1927.

No. 1905.

Tolles, Hogsett & Ginn, of Cleveland, Ohio, and Wilkinson, Huxley, Byron & Knight, of Chicago, Ill. (H. A. Marting, of Cleveland, Ohio, and Charles L. Byron, of Chicago, Ill., of counsel), for plaintiff.

Hull, Brock & West, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This is the usual patent infringement suit. It is based upon United States letters patent 1,432,658, issued to C. J. Bellar October 17, 1922; 1,548,220 issued to Charles Spaeth August 4, 1925; 1,544,356, issued to Charles Spaeth June 30, 1925; and reissue letters patent 16,284, issued to Charles Spaeth March 9, 1926. Title in plaintiff is admitted. On this hearing, infringement was not denied. The defense mainly relied on as to each patent is invalidity. The device in controversy is an improved grease or oil pump particularly designed to deliver heavy liquids from a container to bearings, or other receptacles. It is in common use around garages. Bellar's patent covers the pump itself, and the three other patents cover special devices used in connection with the pump. As the main controversy involves the validity of Bellar's patent, it will be first considered. It contains only one claim, the elements of which adequately set forth the invention. This claim calls for a pump for dispensing grease, oil, etc., comprising: (1) A cylinder having (a) a valved piston therein and (b) a head at the bottom of said cylinder having (c) a conical shaped chamber and (d) a valve seat and (e) a ball valve therefor centrally at the bottom thereof and below the limit of the stroke of said piston to provide clearance between said head and valve; (2) an intake pipe connected with the intake end of said head; (3) a rack shaft for said piston; (4) a hollow head fixed to the upper end of said cylinder having (a) a central depending guide for said rack shaft and provided with (b) oppositely disposed lateral journals; (5) a pinion shaft crossing the interior of said head engaging with said rack and mounted within said journals; (6) and a plurality of tie rods clamping said heads to said cylinder.

Two other useful features of the device are not included in the claims, i. e., a stand pipe or column seated on the head of the cylinder, and an adjusting screw set in the cap of the stand pipe. The first performs the useful function of sealing the pump and protecting the pinion rack. The second serves to limit the piston stroke and is useful in measuring the quantity of oil delivered by one stroke.

The defendant contends that all the elements of the claim are old in the art and were used in the same combination to accomplish the same result. It is true that pumps for dispensing grease and oil are old devices. Obviously, pumps of this kind must have cylinders and pistons and valves. Obviously, cylinders must have heads and intake and outlet pipes. However, as showing the elements of the claim in issue in the same or similar combinations, numerous prior art patents are relied on. As disclosing a conical head and ball valves, Kohnz 408,183, Winterhoff 1,036-398, and Children 1,185,059, are cited. As disclosing a rack and pinion, Children, Haines 959,216, Holt 1,011,790, and Davis 998,281, are cited. As disclosing the closed head and guiding features for the piston rod and rack, Children and Winterhoff are cited. As disclosing the depending guide feature, Winterhoff and Wichman, 937,198, are cited. As disclosing tie rods, Davis, Wichman, and Gould, 1,391,104, are cited. Upon the basis of this art, defendant asserts that Bellar's combination is a mere aggregation of unrelated elements, each performing its old function in the same way and not co-operating with the other elements to produce a new result. Defendant further contends that if a combination in a patentable sense were thereby produced, it is none the less invalid because each and every element is not only old, but was used in the prior art for the same identical purpose as the corresponding element in this patent, and operates in the same manner and performs only the same function.

In my opinion, Bellar is not open to the objection that it is a mere aggregation. Whether invention was required, in view of the prior art, to produce his combination, is a different question; but his combination of elements is, I think, what is known in the patent law as a true combination. Each of the elements of the claim is in active

co-operation with the other elements and is necessary to accomplish the desired result, i. e., the efficient pumping of heavy liquids from one container to another. If any one element were removed, without the substitution of an equivalent, the device would not function. Every element is in use and actively co-operating whenever the pump is functioning. It is true that some of the elements are merely brought into juxtaposition with other elements and are performing here only the same function as they performed elsewhere. They are still valves, pinions, and guides, as they were before they were brought into the combination. In a general sense, this is true of every combination. But they are, none the less, merged and combined into a unitary device, and each and all are necessary to its functioning.

It is often difficult to distinguish between that juxtaposition of old elements which makes only an aggregation, and that which produces a true combination in the patentable sense. It is difficult to determine this inquiry by formula or definition. It is easier to determine what is and what is not an aggregation by looking at the facts in each case in which a patent has been held invalid on this ground. A typical instance is found in Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, known as the "Lead Pencil Case." A sheathed lead pencil and a rubber eraser were joined together. Neither the pencil nor the eraser in the new combination performed any other or different function than each performed when they were separate. It was said that neither element in the new combination co-operated with or modified the action of the other so as to produce any new or different result, but the result was merely the sum of the two old results, and hence the patent was invalid as a mere aggregation. Another typical case is Grinnell Washing Mach. Co. v. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196. In that case, a washing machine and a clothes wringer were combined, but one washed clothes and the other wrung them in the new combination just as they had previously done separately, and neither co-operated with nor modified the action of the other. It was held that the result was merely an aggregation and not a patentable combination. In Gas Machinery Co. v. United Gas Improvement Co. (6 C. C. A.) 228 F. 684, will be found a thorough consideration of these legal principles and a full review of the authorities. See, also, Waite, Patent Law, 46. In the light of the principles stated in the foregoing authorities, it is plain that Bellar is not an aggregation. If Bellar contained a claim merely combining his pump with the adjusting screw, some basis might exist for denying its validity on this ground, but such a contention cannot justly be made against the juxtaposition in the pump of the various old elements.

The controlling question here is whether, in view of the prior art, invention was required to assemble and organize these elements into a new grease or oil pump. Admittedly, Bellar's invention is specific and was made in an old and crowded art. Pumps functioning in the same manner and accomplishing the same results are numerous and have long been in existence. Certain presumptions and considerations exist, making in favor of invention. The first is the usual presumption of validity arising out of the issue of the patent. This presumption is strengthened by the fact that broader claims limited to some of the elements were rejected, and that original claim 3, now the only claim of the patent, was immediately allowed without substantial modification upon its first presentation to the same examiner who had rejected all of the original claims. The presumption of validity is further strengthened by the fact that the patent examiner had before him and considered both Haines and Children, which, in my opinion, are the closest and best references now relied on. Moreover, a strong showing is made that plaintiff's pump was most favorably received by the trade, has enjoyed a wide commercial success, and has displaced other devices competing with it for the same class of trade. Defendant, although it first tried to make and market to the same trade two other types of pump, discarded eventually both of them, procured samples of plaintiff's pump, and has since made and sold exact copies. As was said by Judge Hough in Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277: "The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think."

These presumptions and considerations cast on defendant the burden of making a satisfactory showing of invalidity. The cited art has been duly considered. It will serve no useful purpose to review in detail each item of it. It is true that a conical head and ball valve are found in some of the patents, performing substantially the

same function as defendant's lower head and ball valve. It is particularly true of Kohnz. It is likewise true that a rack and pinion are to be found in Children and Haines; that a depending guide is to be found in Wichman; and that a closed head and guide are found in Children. However, in none of the several patents is found all of these elements brought together and assembled into a unitary, operative device. In Haines, where are found a rack and pinion most closely resembling Bellar, there is lacking the conical shaped chamber at the bottom of the cylinder with the valve seat and ball valve in the bottom thereof below the stroke of the piston. Nor is the piston made with ball valves. Haines has also a hollow head affixed to the upper end of the cylinder, but does not have a central depending guide for the piston rack nor laterally disposed journals for the pinion shaft. Such guide and journals, if any he has, are not only structurally different from Bellar, but it is doubtful whether they perform the same function; it is certain that they could not perform it in the same efficient way. Tie rods uniting the upper and lower heads of the cylinder are wholly lacking, and their absence or addition cannot be regarded as an immaterial consideration in view of the stress to which the cylinder is subjected in operation. Children, next to Haines the closest reference, is also equally distinguishable. It has no guide depending from the upper cylinder head, nor is the upper or lower cylinder head hollow or conical, and while there is a ball valve at the inlet pipe, the piston itself is distinctly different and is without valves.

Even if all the elements of Bellar can be found in the prior art, it is necessary to range through a large volume in order to discover it. The operative elements of Bellar are not found in any one, nor in any two or three patents, but would have to be selected from a large number, and, even when found, would have to be modified and redesigned in order to serve his purpose. For instance, in no patent do I find any lower cylinder head with ball valves and a valve seat even closely approximating Bellar. In none do I find a hollow upper cylinder head with oppositely disposed lateral journals and a central depending guide even approximating Bellar. With the exception of the tie rods, as found in Wichman, such elements as are common to Bellar and the prior art were not available for his use by mere selection and transfer to his device, but required modification and redesigning certainly not obvious and I think beyond the range of ordinary mechanical skill. Even conceding that plaintiff's commercial pump and defendant's infringing structure may have eliminated the depending part of the guide, both structures preserve all of the features thereof essential to the realization of the functions it was designed to perform.

The question of invention is close and not free from difficulty. Upon the whole, I am of opinion that the weight of considerations on that question is strongly in plaintiff's favor. It cannot be said that defendant has overcome by a satisfactory showing the presumption of validity, much less that it has clearly shown invalidity.

It is conceded that Bellar's device embodied invention only of that type known as "specific." He is not entitled to any broad range of equivalents. Yet, if the quality of invention is to be denied to his combination, then all of the prevailing Patent Office standards of invention will have to be radically changed. It appears that numerous patents have been granted for pumps in which there are fewer patentable differences over the prior art than there are between Bellar and the art cited in opposition. As instancing the truth of this observation may be noted the issue of Holt 1,011,790 over Davis 998,281; of Hedenberg 1,043,763 over Davis 998,281 and Holt 1,011,790; of Children 1,185,059 over Haines 959,216; of Gould 1,391,104 over Davis 998,281 and Hedenberg 1,043,763; and of Holt 1,011,790 over Hedenberg and Davis. The differences between the pumps disclosed by these patents, over the pertinent art that might be cited against them, are less pronounced than the differences between Bellar and the patents cited in opposition, and their several steps forward in the art were not more meritorious than the advances made by Bellar. In my opinion, Bellar is not invalid for lack of invention and is infringed. He is entitled to have his specific device protected against a plain piracy, even though other pump makers who had legitimately developed a distinctive pump from the same art could not be held guilty of infringement.

Spaeth 1,548,220 is for a drip catcher and return drainpipe for a dispensing pump and tank. Its object is to catch oil left in the nozzle and drain it back to the container. Claims 1 and 5 only are in issue. In claim 1 the novel element is the compression feature of the coiled spring exerting a downward thrust towards the lower end of the drainpipe. In claim 5 is found

the additional element of adjustability so as to increase the tension of the compression spring. All other features of the device are plainly old. Defendant's device differs only by the addition of a fixed collar on the drainpipe which admittedly performs no new or different function.

The most pertinent citations against this patent are Wyckoff 1,471,230, Davis 1,510,-981, and Henley 1,366,729. All of these patents, particularly Davis and Wyckoff, disclose fully and clearly Spaeth's inventive concept, i. e., a drainpipe to catch the dripping oil and carrying it back to the tank. If invention is present in this fundamental concept, it is at most of that simple kind often referred to as a "happy thought." Once the conception is attained, the creation of means to practice it involves little ingenuity and can hardly be said to be beyond the ability of a skilled mechanic. As said, this conception was attained prior to Spaeth by two, if not three, inventors. Each of them devised and disclosed means whereby the conception might be practiced. Among those means are found all the elements of Spaeth, functioning in the same manner and producing the same results, with the possible exception of the downward thrust of the compression spring. In Davis and Wyckoff are found coiled springs exerting a torsional thrust to return the drainpipe to its operating position under the faucet or nozzle. In Henley is found a similar spring with additional means for adjusting or increasing its tension. The only advance over this art claimed in Spaeth's favor is that he placed his spring under compression so that it exerts a downward thrust so as to seal the opening to the tank or container. Even this additional function is claimed for Wyckoff and Henley.

Conceding to Spaeth novelty and utility in this respect, I am of opinion that nothing beyond the expected ability of the skilled mechanic was required or needed to provide these additional means. If and whenever in the operation of the devices of Henley, Davis, and Wyckoff, a need was disclosed for a downward thrust or additional compression, any skilled mechanic could have provided the means. If Davis or Wyckoff were novel and embodied invention, the task of redesigning and rearranging the spring of either one in order to accomplish this result would seem to be within the refining and improvement always permissible and often necessary in adapting a meritorious invention for commercial use and sale. In

my opinion, both claims in issue of Spaeth are invalid for lack of invention.

Spaeth 1,544,356 is for a hand truck such as is commonly used in supporting and wheeling barrels or drums from place to place. Owing to the growth of the automobile industry, a truck of this kind is a useful and widely used labor-saving device. Claim 1 in issue accurately describes the invention. Briefly stated, the elements are: (1) An axle having wheels mounted upon its ends; (2) angular coupling members sleeved upon the axle; (3) tubular handles inserted within sockets in the coupling members; (4) a pair of flat bars bolted to the coupling members and converging and joined together at their apex; (5) a depending foot member supporting the coupling members at said apex.

In my opinion, invention is not present in this device. Plaintiff's present truck is a logical development from its simple three-wheeled truck with a handle illustrated and disclosed in its advertising bulletins. No invention was required to make over that truck so as to provide a depending foot for the small wheel and to add thereto in place of the pivoted handle the familiar handles of a truck or wheelbarrow. Or, to state the art in another way, no invention was required to add to said device the truck handles of Phelps 1,150,964 and substitute a foot for the small wheel. Or, to state the art in still another way, no invention was required to combine the triangular platform of the warehouse truck in Kistler and Buck 344,661, with the handles, axle, and wheels of Phelps. Nor can invention be predicated on merely substituting one material for another, or merely refining and improving an existing device so as to make it merely cheaper and more efficient, or upon obvious rearrangements and combinations of familiar and well-known elements. Despite the presumption of validity due to the issue of a patent, I am of opinion that it was improvidently granted and is invalid for lack of invention.

Spaeth reissue patent 16,284 is for a hose nozzle. It contains fourteen claims, all of which are in issue. The object of the invention is to provide a nozzle so formed as to anchor itself in a filling opening. The invention consists merely in providing on the upper surface of a tapered nozzle a plurality of projections. If valid, this patent is undoubtedly infringed.

Most, if not all, of the familiar nozzles are tubular and tapering. If the conception

of anchoring a nozzle in a filling opening by means of one or more spaced lugs is not novel, it is difficult to perceive any invention in Spaeth's device. In my opinion, the conception is old and anticipated, and that substantially similar means are likewise disclosed in the cited art. In Townsend 1,-319,439 is plainly disclosed the conception of anchoring a nozzle in a filling opening by means of an upwardly projecting lug. In King 1,337,558 the same conception is disclosed with two lugs and additional means to shift the position of the lugs on the nozzle. In Cooke 411,375 we have another nozzle with a hook to "hold the hose in place during the charging process." In my opinion, Spaeth's inventive concept is fully met and anticipated by this art, and that no invention was required to develop his specific nozzle out of this background of prior art. As that art discloses at least a tubular and tapered nozzle with one hook or lug to anchor it in a filling opening during the charging process, no invention was required to add other and additional lugs so as to accommodate the nozzle to various sized openings. That this is true under familiar principles of patent law seems too plain to require discussion, and notwithstanding this patent was issued over the citation of the most pertinent prior art, I am compelled to hold that it was improvidently granted and is invalid for lack of invention.

The evidence shows that defendant was making its infringing nozzle prior to the issue of Spaeth's original patent, and continued its manufacture and sale during the intervening period before the reissue was applied for. Defendant contends that the reissue is invalid in view of its intervening rights. To this contention plaintiff replies that the doctrine of intervening rights applies only to protect one whose conduct has been influenced by the action or nonaction of the patentee and does not operate to protect an infringer who has pirated another's invention without being thus misled. These respective contentions are noted merely to show that they have not been overlooked. It is not now deemed necessary to express any opinion with respect to them.

A decree will be entered in conformity to the views herein expressed, finding valid and infringed claim 1 of Bellar, and invalid all the claims in issue of the three Spaeth patents. In view of this result, no judgment for costs in favor of or against either party will be rendered.