## REPUBLIC METALWARE CO., Inc., v. WEED & CO., Inc.

District Court, W. D. New York.

Aug. 15, 1930.

J. William Ellis, of Buffalo, N. Y., for plaintiff.

Parker & Prochnow, of Buffalo, N. Y. (Charles W. Parker, of Buffalo, N. Y., of counsel), and Wilkinson, Huxley, Byron & Knight, of Chicago, Ill. (Henry M. Huxley, of Chicago, Ill., of counsel), for defendant.

HAZEL, District Judge.

In this action it is alleged that the Gustav C. Ullrich patent, No. 1,699,459, for sprinkling can, dated January 15, 1929, is infringed by the can manufactured and sold by defendant, which is adapted for like purposes.

The defenses are noninfringement, invalidity, and aggregation of known elements and nonco-operative functions.

Plaintiff's sprinkling container has a dual function, i. e., the spraying of garden shrubbery by means of a perforated dome-shaped sprinkling-head attached to the nozzle of the can, and conversion of the can to a deliverance through the nozzle of a solid stream of water into automobile radiators or other vessels. The specification states that in con-structing the conical spout, the object was to permit it and the nozzle to which it is permanently joined, on tilting the can forward, to "readily enter the filling neck of an automobile radiator or the like without danger of its displacement while emptying the contents of the can." In order to hold the spout and discharge nozzle in position while functioning to fill the radiator, the nozzle is curved outwardly into an approximate hook-shape, to allow supplying the water into the filling neck of the radiator at a convenient angle, and when the can is brought to a horizontal position, completely discharging its contents. The lower part of the shank of the nozzle is threaded on the outside to receive a detachable sprinkler-head (also threaded) with its removable, perforated top which is used for spraying. The sprinkler-head is in two pieces. The cap is screwed to the bowl which in turn is screwed to the shank of the nozzle. The spout and nozzle are joined together at a circular flange upon which the sprinkler-head abuts when it is screwed into position to the spout over the nozzle. In describing the hook-shaped or angular nozzle and its downward extension into the filling neck of the radiator, the specification states that by such construction it is firmly held in position without slipping, and splashing of the water over the hood of the car is prevented, and a reliable fulcrum or bearing for the container during its tilting for discharging its contents is provided. The arrangement of the parts obviously makes it unnecessary to use different cans for effecting different purposes. The nozzle is described as hook-shaped, or as having a hook-shape, while in claim 2 it is referred to as substantially hook-shaped, and this prompts plaintiff's contention that the patentee did not restrict himself to the specific form of the nozzle; and that other shaped nozzles performing the same function are within its terms. Although the extent of the curve on the nozzle is not specified, Fig. 2 of the drawing is indicative of it. The simplicity of the device is plainly apparent on reading the claims and scanning the drawings. The two descriptive claims in issue, which are for a combination of elements, read as follows:

"1. A sprinkling can, comprising a cylindrical body having a spout extending therefrom, a nozzle applied to the discharge end of the spout for delivering a solid stream of fluid, the shank of said nozzle having an external screw thread thereon and the portion thereof forwardly of the screw thread being curved outwardly, and a perforated sprink-

ler-head detachably connected to the threaded-shank of the nozzle, the curved portion of the latter extending into said sprinkler-head with its cutler and discharging laterally into the head below the perforations thereof."

"2. A sprinkling can, comprising a cylindrical body having a spout extending therefrom, the discharge end of the spout terminating in an attaching flange, the shank of said nozzle having an external screw thread thereon and the remaining portion thereof forwardly of the screw thread being substantially hook-shaped and forming a fulcrum for the can in tilting it to discharge its contents, and a perforated sprinkler-head detachably connected to the threaded-shank of the nozzle, the hook-shaped portion of the latter extending into said sprinkler-head and at the lower side thereof, below the perforations of the head."

The file wrapper shows that the original claims 2 and 3 were rejected by the Patent Office on either the German patent to Kuster or the Austrian patent to Wosnitza; the Examiner stating that in view of such prior patents, there was no invention in the adaptation of a screw thread for engaging the sprinkler-head, as such an alteration was merely a matter of mechanical skill. The Examiner further stated in effect that extending the hook-shaped nozzle, regardless of its length, into the sprinkler-head did not introduce a new function.

In each of the patents cited by the Examiner is shown a curved spout at its outer end which is frictionally attached to a sprinkler-head. Upon removing the sprinkler-head, a solid stream of water may be delivered, upon inserting the curved spout in the orifice of a radiator. Following the action of the Patent Office, the patentee amended the claims by inserting in relation to the nozzle the words "forwardly of the screw thread" to differentiate plaintiff's specific device from the references. But the Examiner remained unyielding, saying that his former objection, that it made no difference that the outwardly curved nozzle extended to the sprinkler-head forwardly of the screw thread, had not been met, and he again rejected the application. Another amendment was filed providing for extending the curved part of the nozzle into the sprinkler-head "with its outlet discharging laterally into the head below the perforations thereof," and with this limitation the claims were allowed and the patent issued. In explaining the phrase "discharging laterally into the head below the perforations," the applicant pointed out to the Examiner that by his adaptation the curved nozzle allowed the water to first flow, into the lower part of the head or chamber below the perforations. "The head," he said, "acting as a sump for receiving the water before its discharge in a direction axially of the spout."

The question therefore arises whether there is co-operative action between the form of the nozzle in emitting the water below the perforations and pooling in the bowl before its discharge. The applicant's acquiescence in the rejection of broader claims constituted an admission that the original claims were unpatentable, and one of the questions presented for decision is whether the combination of elements produces co-operative action between the curved end of the spout when the sprinkler-head is screwed in position for sprinkling, or whether the result follows from an aggregation of parts when the sprinkler is used.

It is fully appreciated that, notwithstanding the rejection of the original claims, the final grant of the patent gave the device a prima facie rating of patentability. But, as we know, the decision was not conclusive and the attacks of invalidity are open to inquiry and examination. Aside from the defenses of noninfringement due to the asserted narrowness of the claims in issue, the defense that no patentable result eventuated from the changes and modifications over the prior art manifestly challenges attention. It seems to me that the structural changes constitute a carrying forward by mere mechanical skill or aggregation of known elements without cooperative functions. Water-sprinkling containers, as distinguished from pouring water directly from a spout or nozzle, are extremely old; and improvements in such devices for diversified uses, even possessing the specific functions of plaintiff's patent, were likewise apparent as appears by the prior foreign patents cited in the file wrapper and those relied upon here. The prior patents to Mee, Baker, the watering can of the National Stamping Company (Defendant's Exhibits F, G, and 9), though of somewhat different construction, supported the original view of unpatentability entertained by the Patent Office; and I think that the assembled elements, even with plaintiff's curved nozzle located forward of the screw-thread, and streaming the water laterally to the perforations in the sprinkler-head, did not disclose invention.

In the Baker patent, No. 453,530, of June 9, 1891, is shown a combination of elements

by which the container is usable for sprinkling through a dome-like, perforated head in appearance similar to plaintiff's, and also for converting the can for pouring water into a receptacle from the threaded spout upon taking off the large head F, the device also having a smaller head E for spraying disinfectants. Plaintiff's criticism of the device is that the screw threads extend to the extreme outer end of the spout and not forward of a hook-shaped nozzle for forming a fulcrum. The patent, however, clearly shows that there was no novelty at the date of the invention in suit in alternately using the water can as a spraying medium, and, on removing the head, for delivering solid streams from the bent spout. That there were no automobiles in 1891 and the can not used for filling radiators, when the prior art patents were granted, does not seem to me of special importance in considering the questions here presented.

The Mee patent, No. 291,375, for can-nozzle was neither, it is true, designed for a garden sprinkler nor an automobile filler. It was an oil can having an angular nozzle and screw threaded cap and threaded F-G to which the cap was screwed when not in use. If desired, it obviously was usable for filling radiators with water, as well as for sprinkling purposes, upon screwing an ordinary sprinkler rose onto the threaded portion, as shown in Fig. 2.

Fig. 2.

The Foss patent shows a can for sprinkling or pouring a solid stream of water. It has a removable cap and a straight spout for inserting directly into the sprinkler-head in the shape of a nozzle. I think it is obvious that the sprinkler-head could have been made with threaded connections to the spout, and the end of the nozzle inclined at an angle with the head by a skilled mechanic. Plaintiff stresses the specific, hook-shaped nozzle of the patent in suit as a distinguishing feature from all the prior devices, but in spray-

ing it makes no difference whether the nozzle is hook-shaped or straight—although in pouring water into the radiator such nozzle obviously has an advantageous function as a fulcrum. But filling a receptacle or vessel by using a curved or angular nozzle attached to the spout is shown in the patents to Kuster, Wosnitza, Mee, and Baker, as well as in defendant's Exhibit K, shown in illustrations in its 1920 catalogue; and that plaintiff's nozzle had a different pitch or curve for supplying a fulcrum in a specific way does not, in my opinion, import patentability, inasmuch as the shorter, angular, or projecting nozzles in prior structures possessed a similar function.

Plaintiff contends for a broad construction of the claims and presents the argument that discharging the stream laterally for sprinkling purposes below the perforations should include defendant's device, which, it is said, has a hook-shaped nozzle. I do not agree with this view, inasmuch as I think that the plaintiff's definite curving outward of the nozzle was to impart a fulcrum to prevent slipping at the radiator opening, and not as a means of effecting cooperation between the head and the nozzle. Defendant's nozzle has a "cylindrical extension somewhat in the direction of the spout," as the witness McNulty testified, without having any curved portion and without discharging the stream laterally into the sprinkler-head; and the stream is directed into the perforations of the perforated cap and not laterally into the head below the perforations. In filling defendant's radiator the sprinkler rose is removed, the nozzle being somewhat similar to the end of the spout in the Baker can, and resting on the end during the pouring at the radiator opening. Plaintiff's manner of discharging the water into the head does not strictly constitute a cooperation between the nozzle and the head, for I incline to the view, as testified by McNulty, that it makes no difference in the sprinkling action whether in fact a nozzle is used, since pouring the water directly into the sprayer and keeping it full by pouring, as in Exhibit H, for example, would produce the effect.

■ If I am right in this view, the curved nozzle is without function except as a fulcrum in filling the radiator, an element found in prior structures; and screwing the head onto the nozzle which, together with the head, separately performed known functions, did not involve invention because the result was not the product of the combination. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241. It was an aggregate of parts, each part separately performing its anticipated func-

tion. Double Pointed Tack Co. v. Two Rivers Mfg. Co., 109 U. S. 117, 3 S. Ct. 105, 27 L. Ed. 877; Gas Machinery Co. v. United Gas Imp. Co. (C. C. A.) 228 F. 684; Marvel Equipment Co. v. Merit Oil' Equipment Co. (D. C.) 29 F.(2d) 308. I have considered plaintiff's reliance on the case of Reckendorfer v. Faber, 92 U. S. 357, 23 L. Ed. 719, and particularly the example there given of the stem-winding watch. There, however, the double effect resulted from the combination of the stem holding the watch and the key which wound it. Both instrumentalities were imperatively essential in combination to achieve the result. Without both elements working together, the watch would have been inoperative. Not so here—for here the nozzle did one thing and the sprinkler another without aid from one to the other. Entertaining this view, without doubt in relation thereto, the commercial success of plaintiff's container is without controlling effect. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (C. C. A.) 276 F. 910.

My conclusion is that the presumption of validity arising from the issuance of the patent has been successfully overcome; that the structural changes in plaintiff's sprinkling can over the prior' art, and the asserted beneficial advantages eventuated through the exercise of mere mechanical skill rather than through the inventive faculties; and also that the claims in issue are invalid, in that they disclose an aggregate of elements without patentable co-operation between them, as distinguished from a new combination producing a new and useful result. It is therefore deemed unnecessary to treat of the asserted scope of the claims, or defendant's denial of infringement.

A decree dismissing the bill may be entered with costs.